**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SAMERA BUTLER, Indiv. and o/b/o TOP CHOICE HOME CARE,<br><br>*Plaintiffs,*<br><br>v.<br><br>AGING WITH COMFORT,<br>PETRA CAPITAL PARTNERS,<br>SILVERPALM CAPITAL,<br>CHRISTIAN CHIBRAS,<br>JEAN PAUL DESROCHERS, and<br>BESHMIR KRIPA,<br><br>*Defendants.* | CIVIL ACTION NO. 2:26-CV-04855- JS |

**ORDER**

**AND NOW**, this ___ day of ________________, 2026, upon review of the Motion for Judgment on the Pleadings (the "Motion") of Defendants, Aging with Comfort, Inc., Petra Capital Partners LLC, Silverpalm Capital, Christian Chibras, Jean Paul Desrochers, and Beshmir Kripa (collectively, the "Defendants"), and any response, it is hereby **ORDERED** that the Motion is **GRANTED**. Pursuant to Fed.R.Civ.P. 12(c), judgment on the pleadings is hereby entered in favor of Defendants and all claims asserted by Plaintiffs against Defendants are hereby dismissed, with prejudice.

**BY THE COURT:**

______________________________
Hon. Juan R. Sanchez
United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SAMERA BUTLER, Indiv. and o/b/o<br>TOP CHOICE HOME CARE,<br><br>*Plaintiffs,*<br><br>v.<br><br>AGING WITH COMFORT,<br>PETRA CAPITAL PARTNERS,<br>SILVERPALM CAPITAL,<br>CHRISTIAN CHIBRAS,<br>JEAN PAUL DESROCHERS, and<br>BESHMIR KRIPA,<br><br>*Defendants.* | CIVIL ACTION NO. 2:26-CV-04855- JS |

**DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendants, Aging with Comfort, Inc. ("AWC"), Petra Capital Partners LLC, Silverpalm Capital, Christian Chibras, Jean Paul Desrochers, and Beshmir Kripa (collectively, "Defendants"), hereby file this Motion for Judgment on the Pleadings (the "Motion") against Plaintiffs, Samera Butler ("Butler") and Top Choice Home Care, LLC ("Top Choice") (collectively, the "Plaintiffs").

For the reasons described in the accompanying Brief, the Defendants respectfully request that the Court enter judgment in the Defendants' favor on all counts alleged in Plaintiffs' Amended Complaint, or, in the alternative, dismiss Plaintiffs' RICO claim and decline supplementary jurisdiction on Plaintiffs' state law claims.

Respectfully submitted,

**FOX ROTHSCHILD LLP**

Dated: August 17, 2026 By: */s/ Ely Goldin*

Ely Goldin, Esquire (ID No. 91494)
980 Jolly Rd., Suite 110
Blue Bell, PA 19422
Phone: (610) 397-6500
egoldin@foxrothschild.com

*Attorneys for Defendants Aging with Comfort, Petra Capital Partners, Silverpalm Capital, Christian Chibras, Jean Paul Desrochers, and Beshmir Kripa*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SAMERA BUTLER, Indiv. and o/b/o<br>TOP CHOICE HOME CARE,<br><br>*Plaintiffs,*<br><br>v.<br><br>AGING WITH COMFORT,<br>PETRA CAPITAL PARTNERS,<br>SILVERPALM CAPITAL,<br>CHRISTIAN CHIBRAS,<br>JEAN PAUL DESROCHERS, and<br>BESHMIR KRIPA,<br><br>*Defendants.* | CIVIL ACTION NO. 2:26-CV-04855- JS |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION**
**FOR JUDGMENT ON THE PLEADINGS**

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, Defendants, Aging with Comfort, Inc. ("AWC"), Petra Capital Partners LLC, Silverpalm Capital, Christian Chibras, Jean Paul Desrochers, and Beshmir Kripa (collectively, "Defendants"), respectfully request the Court to enter an order dismissing Plaintiffs', Samera Butler ("Butler") and Top Choice Home Care, LLC, ("Top Choice") (collectively "Plaintiffs"), claims against Defendants. The Amended Complaint fails to state a claim upon which relief can be granted, due to the existence of the Confidential Settlement Agreement between Plaintiffs and AWC. Accordingly, Defendants respectfully request that the Court dismiss Plaintiffs' Amended Complaint with prejudice, or, in the alternative, dismiss Plaintiffs' RICO claim and decline supplementary jurisdiction over Plaintiffs' state law claims.

## I. INTRODUCTION

The claims in Plaintiffs' Amended Complaint[1] are precluded by the release provision in the settlement agreement, titled the Confidential Settlement Agreement and Mutual General Release ("Settlement Agreement"), that Plaintiffs and Defendant AWC entered into in 2024.

In the Settlement Agreement, Plaintiffs agreed [redacted]."[2] (ECF No. 26, Ex. A, Section 3(a)). The parties asserted that they [redacted]. (ECF No. 26, Ex. A, Section P). [redacted]." (ECF No. 26, Ex. A, Section 3(d)).

Here, all of the allegations upon which Plaintiffs' seven causes of action are based [redacted] the Asset Purchase Agreement and subsequent Settlement Agreement, as discussed in greater detail below. Thus, the merits of Plaintiffs' claims need not be addressed, and should be summarily dismissed with prejudice.

## II. FACTS AND PROCEDURAL HISTORY

AWC is non-medical home care agency providing in-home services to the Pennsylvania and Delaware community. (ECF No. 26, Ex. A, Ex. 1). On or about September 8, 2021, AWC

---

[1] The Amended Complaint contains inconsistent paragraph numbering. As such, Defendants will refer to both page numbers and paragraph numbers when citing to the Amended Complaint.

[2] The Settlement Agreement defines the "Dispute" as the parties' dispute regarding AWC's Contingent Payments under the APA and Plaintiffs' violations of the APA. (ECF No. 26, Ex. A, Section K).

entered into an Asset Purchase Agreement ("APA") with Butler and Top Choice for the purchase and sale of certain assets of Top Choice. (ECF No. 14, p. 2 ¶ 12). In consideration, AWC agreed to pay [redacted] in contingent payments, a defined term. (ECF No. 26, Ex. A, Ex. 1 Section 1.4). The amounts of the contingent payments, the timing of any such payments, and the conditions precedent to any such payments were set forth in Schedule 1.4 to the APA. *Id.* Notably, among other terms, Butler and Top Choice agreed to adhere to the non-solicitation and non-competition provisions, among other assurances. (ECF No. 26, Ex. A, Ex. 1 Section 5.5(a)-(b)).

AWC paid the initial payment [redacted] to Plaintiffs. (ECF No. 14, p. 2 ¶ 14). Between September 8, 2021, and June 17, 2022, AWC made one or more payments. (ECF No. 26, Ex. A, Section H). Beginning in 2022, Plaintiffs materially breached the APA by operating a competing non-medical home care agency in Pennsylvania and actively soliciting employees and clients that had been acquired by AWC under the APA. *Id.* AWC sent two cease and desist letters to Plaintiffs outlining their breaches of the APA on June 17, 2022, and July 26, 2022, explaining that AWC's payment obligations were tolled under the APA until compliance under Section 5.8. (ECF No. 26, Ex. A, Exs. 2-3). In turn, AWC ceased the scheduled contingent payments in response to Plaintiffs' material breaches. (ECF No. 26 ¶ 4).

Thereafter, AWC did not hear from Top Choice or Butler for approximately two (2) years. (ECF No. 26 ¶ 5). Beginning in September 2024, Butler reappeared and immediately embarked on a campaign of extortionate threats directed at AWC and its principals by threatening to file fabricated criminal complaints with the District Attorney, report AWC to the Attorney General, contact licensing boards, file FinCEN referrals, generate adverse media publicity, and damage AWC's principals' professional licenses—unless AWC paid her demands. (ECF No. 26 ¶ 6). Despite these threats, on October 7, 2024, AWC, Butler, and Top Choice entered into a Confidential Settlement Agreement and Mutual General Release to achieve finality. (ECF No. 26, Ex. A). The parties gave further assurances, and AWC agreed to and did pay [redacted] via a payment schedule. (ECF No. 26 ¶ 8).

The Settlement Agreement contains various features that require the immediate dismissal of Plaintiffs' Amended Complaint:

1. [redacted]." (ECF No. 26, Ex. A, Section 3(a)).

2. [redacted]." (ECF No. 26, Ex. A, Section P).

3. [redacted]." (ECF No. 26, Ex. A, Section 3(d)).

4. [redacted] . . ." (ECF No. 26, Ex. A, Section 7).

5. [redacted]." (ECF No. 26, Ex. A, Section 15).[3]

---

[3] Plaintiffs were represented by counsel during the Dispute, but elected to terminate the attorney-client relationship with their representation and executed the Settlement Agreement unrepresented, as memorialized in the Settlement Agreement. (ECF No. 26, Ex. A, Sections L-M). Plaintiffs attested to the following events: "During the Dispute (and on at least three (3) separate occasions),

6. "This Agreement, together with the Exhibits attached hereto, all of which are incorporated herein by reference, contains the entire agreement between the Parties with respect to the subject matter hereof, and supersedes and cancels all previous agreements, commitments and writings between the Parties." (ECF No. 26, Ex. A, Section 18).

After AWC [redacted], Butler confirmed receipt of full payment and acknowledged the payment schedule as correct via email on May 1, 2026, and May 15, 2026. (ECF No. 26 ¶ 9; ECF No. 26, Ex. B) ("I want to thank you for working with me and getting this settled"); (ECF No. 26, Ex. C) ("I know that even though a settlement was reached . . ."). However, shortly after receiving the last payment, Butler renewed her extortionate demands. On May 15, 2026, Butler demanded "a personal payment" from AWC, separate from the Top Choice settlement. (ECF No. 26, Ex. E). Thereafter, Butler invoked an alleged political connection to a Pennsylvania state senator, and threatened to pursue the matter further if AWC did not comply. *Id.* On May 18, 2026, Butler escalated her threats, claiming she had "forwarded this case to the Philadelphia District Attorney's Office Economic Criminal Division" for investigation into the original contract and accusing Defendants of criminal conduct. (ECF No. 26 ¶ 10; ECF No. 26, Ex. E). Butler also asserted that the FBI had taken on the matter, falsely suggesting that AWC committed federal crimes. *Id.* By letter dated May 18, 2026, AWC's counsel politely and professionally declined Butler and Top Choice's requests for additional payments beyond the Settlement Agreement. (ECF No. 26, Ex. D).

---

AWC encouraged the Top Choice Parties to engage competent counsel and offered to pay up to $10,000 directly to an attorney of the Top Choice Parties' choosing to ensure that the Top Choice Parties had the assistance and advice of competent counsel in connection with the Dispute. The Top Choice Parties declined AWC's offer and knowingly, intelligently and voluntarily chose to proceed without counsel." *See id.* at Section N.

Despite the Settlement Agreement's release provision, on July 13, 2026, Butler filed the Complaint in this Court *pro se*, alleging claims individually, and on behalf of Top Choice. (ECF No. 2). Plaintiffs filed the Amended Complaint on August 11, 2026. (ECF No. 14). Plaintiffs assert seven barred causes of action impermissibly "arising out of the facts related directly or indirectly to the APA or the Dispute" (ECF No. 26, Ex. A, Section 3(a)): Count I, Federal Civil RICO Violations (18 U.S.C. § 1962); Count II, Breach of Contract (Pennsylvania Common Law);[4] Count III, Fraud in the Inducement; Count IV, Conversion/Theft by Deceit; Count V, Civil Conspiracy to Defraud; Count VI, Economic Duress & Rescission of the 2024 Settlement; and Count VII, Recission of Settlement Agreement (Fraudulent Inducement) (ECF No. 14, pp. 5-6, ¶¶ 24-45).

Defendants filed their Answer on August 17, 2026. (ECF No. 26). Attached to the Answer are five exhibits: Exhibit A is the Settlement Agreement between the parties (including all attachments thereto), and Exhibits B through E are letter and email correspondences with Butler and Top Choice. For the reasons set forth herein, all of Plaintiffs' claims fail as a matter of law and should be dismissed with prejudice.

## III. STANDARD OF REVIEW

The Court may grant a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) when the "movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Society Hill Civic Assoc. v. Harris*, 632 F.2d 1045, 1054 (3d Cir. 1980) (citation omitted). Courts review motions for judgment on the pleadings in the same manner as motions to dismiss. *See, e.g., Rose v. Bartle*, 871 F.2d 331, 342 (3d Cir. 1989) ("We view the standard of review under [another case] as identical to that for review of a dismissal

---

[4] Plaintiffs bring this claim under "Pennsylvania Common Law" despite the APA and Settlement Agreement being governed by Delaware law. (ECF No. 26, Ex. A, Ex. 1 Section 9.5).

under either Rule 12(b)(6) or Rule 12(c).”). The pleadings include the complaint, the answer, and any written instruments attached as exhibits. Fed R. Civ. P. 10(c) (“A copy of a written instrument that is an exhibit to a pleading is a part of the pleadings for all purposes.”).

To survive a motion to for judgment on the pleadings, the standard mirrors that for a motion to dismiss, and “the complaining party must offer ‘more than labels and conclusions’ or ‘a formulaic recitation of the elements of a cause of action.’” *W. Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). “[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.” *Ashcroft v. Iqbal*, 556 U.S. at 678 (citation omitted). The Supreme Court has made clear that the relevant standard “calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of” the necessary element(s) of plaintiff’s challenged claim. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (citing *Twombly*, 550 U.S. at 556).

## IV. LEGAL ARGUMENT

### a. *Plaintiffs’ Claims are Governed by Delaware Law.*

Plaintiffs allege that Defendants violated the APA and assert claims arising from or related to the APA and the Settlement Agreement. (*See generally* ECF No. 14). According to the APA: “The Agreement shall be governed by the internal laws of the State of Delaware as to all matters, including but not limited to matters of validity, construction, effect, and performance.” (ECF No. 26, Ex. A, Ex. 1 Section 9.5). The Settlement Agreement also refers to the same provision in the

APA: "The governing law shall be as set forth in Section 9.5 of the APA," meaning Delaware law. (ECF No. 26, Ex. A, Section 20).

**b. *Plaintiffs' Claims are Barred by the Release in the Parties' Settlement Agreement***

The issue before the Court is whether Plaintiffs' well-pleaded, factual allegations plausibly entitle them to proceed on their seven claims. Because Plaintiffs and Defendant AWC entered into the Settlement Agreement containing an applicable release, Plaintiffs' claims are plainly precluded.

"Delaware law favors the voluntary settlement of contested suits, and such arrangements will bind the parties where they agree to all material terms and intend to be bound by that contract, whether or not the contract is made in the presence of the court, and even in the absence of a writing." *Brady v. Huber*, No. 2021-0717, 2023 WL 3736382, at *4 (Del. Ch. May 31, 2023); *see also Schwartz v. Chase*, No. Civ. A. 2623-VCS, 2010 WL 2601608, at *4 (Del. Ch. June 29, 2010) (same). Thus, "Delaware courts recognize the validity of general releases." *Deuley v. DynCorp Int'l, Inc.*, 8 A.3d 1156, 1163 (Del. 2010) (citation omitted). "Clear and unambiguous language in the release should be given its ordinary and usual meaning." *See Sabatoro Constr. Co., Inc. v. Formosa Plastics Corp.*, No. 92L-08-030, 1996 WL 453460, at *3 (Del. Super. Ct. June 10, 1996) (citation omitted). *See also Edge of the Woods v. Wilmington Sav. Fund Soc'y*, *FSB*, No. 97C-09-281, 2001 WL 946521, at *7 (Del. Super. Ct. Aug. 16, 2001) (dismissing plaintiff's claims and granting counterclaim in defendant's favor because plaintiff breached the release by suing).

"In determining whether the release is ambiguous, the intent of the parties is controlling as to the scope and effect of the release. It must appear that the plaintiff, or a reasonable person in the place of the plaintiff, understood the terms of the release. A court determines the parties' intent from the overall language of the document." *See Deuley*, 8 A.3d at 1163 (internal citations

omitted). Where a plaintiff's "complaint alleges misconduct that pre-dates the [settlement] agreement, [the] claims clearly fall within the scope of the release provisions." *Shipman v. Talley*, 629 Fed.Appx. 199, 203 (3d Cir. 2015) (affirming dismissal of breach of contract, and fraud claims where parties previously agreed to settle "all disputes and claims relating to all claims which have been or could have been asserted").

Here, the existence of the release is explicit in the title of the agreement, the ***Confidential Settlement Agreement and Mutual General Release***, (ECF No. 26, Ex. A), as well as throughout the multiple provisions barring this very lawsuit. Each of Plaintiffs' seven causes of action "arise out of the facts related directly or indirectly to" the APA and subsequent Settlement Agreement, (ECF No. 26, Ex. A, Section 3(a)):

- Count I, Federal Civil RICO Violations (18 U.S.C. § 1962): Plaintiffs' allegations for this claim are based upon "fraudulent Medicaid billings" that occurred prior to the Settlement Agreement's execution. (ECF No. 14, p. 2 ¶¶ 18-19, p. 5 ¶ 26).

- Count II, Breach of Contract (Pennsylvania Common Law): Plaintiffs assert that the breach of contract here was Defendants' breach of the APA. (ECF No. 14, p. 5 ¶¶ 28-29). The Settlement Agreement explicitly released "any claims that the Top Choice Parties have, or may have had, against the AWC Parties on account of or in any way arising out of the facts related directly or indirectly to the APA." (ECF No. 26, Ex. A, Section 3(a)).

- Count III, Fraud in the Inducement: Plaintiffs allege that Defendants fraudulently induced Plaintiffs into the APA. (ECF No. 14, p. 5 ¶ 31). Again, the Settlement Agreement explicitly released "any claims that the Top Choice Parties have, or may have had, against the AWC Parties on account of or in any way arising out of the facts related directly or indirectly to the APA." (ECF No. 26, Ex. A, Section 3(a)).[5]

- Count IV, Conversion/Theft by Deceit: Plaintiffs claim that Defendants impermissibly exercised control over "Plaintiffs' proprietary client accounts and resulting revenues." (ECF No. 14, p. 5 ¶ 33). In other words, the very subject of the APA. Again, the Settlement Agreement explicitly released "any claims that the Top Choice Parties have, or may have

[5] Furthermore, while fraud could be an exception to a release, these facts Plaintiffs plead in support describe Plaintiffs' perception of the circumstances leading up to the 2021 APA, a dispute which was then resolved via the Settlement Agreement in 2024. (ECF No. 26, Ex. A). Further, the heightened pleading standard for fraud was not met. *See* Fed.R.Civ.P. 9(b).

had, against the AWC Parties on account of or in any way arising out of the facts related directly or indirectly to the APA." (ECF No. 26, Ex. A, Section 3(a)).

- Count V, Civil Conspiracy to Defraud: Plaintiffs assert that Defendants "conspired with a common unlawful purpose to strip Plaintiffs of assets, withhold payments, and divert converted funds to alternative investments." (ECF No. 14, p. 5 ¶ 35). Again, this refers to the subject of the APA, as well as the Dispute leading to the execution of the Settlement Agreement. The Settlement Agreement explicitly released "any claims that the Top Choice Parties have, or may have had, against the AWC Parties on account of or in any way arising out of the facts related directly or indirectly to the APA or the Dispute." (ECF No. 26, Ex. A, Section 3(a)).

- Count VI, Economic Duress & Rescission of the 2024 Settlement: Plaintiffs claim that "Because the settlement was procured through unconscionable bad faith and financial strangulation, it is voidable and must be legally rescinded." (ECF No. 14, p. 5 ¶ 38). However, these allegations supposedly occurred prior to the Settlement Agreement's execution and are thus barred. The Settlement Agreement explicitly stated that "AWC and the Top Choice Parties now desire to settle in full any and all claims that any party may have or could have asserted in the Dispute or in connection with any other dealings between AWC and the Top Choice Parties." (ECF No. 26, Ex. A, Section P). Further, Plaintiffs agreed that "they have entered into this Agreement voluntarily and have had the opportunity to consult with counsel." (ECF No. 26, Ex. A, Section 15).

- Count VII, Recission of Settlement Agreement (Fraudulent Inducement): Plaintiff states that Defendants made "material misrepresentations regarding their financial insolvency and total inability to pay the full $1,785,000 debt during mediation," and that Defendants "falsely den[ied] their structural involvement with AWC." (ECF No. 14, pp. 5-6 ¶¶ 40, 44). Again, these alleged facts arose prior to the Settlement Agreement's execution and are barred. The Settlement Agreement explicitly stated that "AWC and the Top Choice Parties now desire to settle in full any and all claims that any party may have or could have asserted in the Dispute or in connection with any other dealings between AWC and the Top Choice Parties." (ECF No. 26, Ex. A, Section P).

Notably, across the Settlement Agreement and its two Supplements, Plaintiffs restated and reaffirmed the validity and enforceability of the Settlement Agreement on no fewer than ***six*** separate occasions: [redacted]

[redacted]. (ECF No. 26, Exs. A-E; ECF No. 26 ¶ 9).

At the end of the day, Plaintiffs knowingly and willingly executed the Settlement Agreement and received very substantial consideration, which was paid in full. Coupled with an extortion campaign, this lawsuit brings impermissible claims against Defendants because payment under the Settlement Agreement has been completed under the contract's terms. Such gamesmanship is against the plain language of the Settlement Agreement. Therefore, this Motion for Judgment on the Pleadings should be granted and all claims against Defendants should be dismissed *with prejudice.*

**c. *Plaintiffs Cannot Avoid the Settlement Agreement on Grounds of Duress***

Plaintiffs cannot void the Settlement Agreement on grounds of economic duress. Under Delaware law, to void a contract on grounds of duress, a party must establish: (1) a wrongful act, (2) that overcame the aggrieved party's will, and (3) that the party had no adequate legal remedy. *Cianci v. JEM Enter., Inc.*, No. Civ.A. 16419-NC, 2000 WL 1234647, at *9 (Del. Ch. Aug. 22, 2000) (citation omitted). Delaware courts apply this doctrine sparingly, recognizing that "parties are generally held to the resulting agreement, even though one has taken advantage of the other's adversity, as long as the contract has been dictated by general economic forces." *Id.* at *10 (citation omitted). Economic duress only applies to "special, unusual, or extraordinary situations in which

unjustified coercion is used to induce a contract." *In re Am. Int'l Grp., Inc., Consol. Derivative Litig.*, 976 A.2d 872, 885 n.31 (Del. Ch. 2009) (citation omitted). Here, the closed pleadings fail to establish any wrongful act by AWC—fear of financial hardship alone is insufficient to constitute economic duress. *See* 25 Am. Jur. 2d *Duress and Undue Influence* § 20 (citations omitted).

Furthermore, by their own admission, Plaintiffs ratified the Settlement Agreement by accepting [redacted]. Under Delaware law, "[r]atification results if the party who executed the contract under duress accepts the benefits flowing from it or remains silent or acquiesces in the contract for any considerable length of time after opportunity is afforded to annul or void it." *Cianci*, 2000 WL 1234647, at *12 (quoting *Graham v. State Farm Mut. Auto. Ins. Co.*, C.A. No. 87C-AU-11, 1989 WL 12233, at *2 (Del. Super. Jan. 26, 1989)). Indeed, "it is axiomatic that a party cannot both accept the benefits which accrue under a contract on the one hand and shirk its disadvantages on the other." *Id.* (quoting *Eastern States Petroleum Co. v. Universal Oil Products Co.*, 49 A.2d 612 (Del. Ch. 1946)). Plaintiffs confirmed receipt of full payment on May 1, 2026, without any claim of duress. (ECF No. 26 ¶ 9; ECF No. 26, Ex. B). Plaintiffs' continued acceptance of all benefits under the Settlement Agreement [redacted]—while never asserting duress—constitutes ratification as a matter of law. *See Gallon v. Lloyd-Thomas Co.*, 264 F.2d 821, 826-27 (8th Cir. 1959) (holding that continued failure to assert duress defense in subsequent dealings amounts to ratification) (cited favorably in *Cianci*, 2000 WL 1234647, at *12).

The Settlement Agreement expressly provides that [redacted]." (ECF No. 26, Ex. A, Section 7). The parties acknowledged

that [redacted] [redacted].” (ECF No. 26, Ex. A, Section 15). Plaintiffs’ repeated affirmations, re-affirmations, and acknowledgements completely undercut the possibility of any claim of duress.

### d. *In the Alternative, Plaintiff’s RICO Claim Should be Dismissed*

#### i. Plaintiffs’ Allegations of Fraud as a Predicate Act Under RICO Fail to Meet the Rule 9(b) Standard

Where plaintiffs rely on mail and wire fraud as the basis for a RICO violation, the allegations of fraud must comply with Rule 9(b). *See Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004) (citing Fed. R. Civ. P. 9(b)). “RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it.” *Kolar v. Preferred Real Estate Inv., Inc.*, 361 Fed.Appx. 354, 363 (3d Cir. 2010) (quotation omitted).

Even when a particular communication alleged to be fraudulent is identified with specificity, it does not meet the requirements of Rule 9(b) if it “fail[s] to explain with particularity how [the] communications were false or misleading” and “how they contributed to the alleged fraudulent scheme.” *Cooper v. Broadspire Servs., Inc.*, No. 04-5289, 2005 WL 1712390, at *8 (E.D. Pa. July 20, 2005) (citation omitted). Where a complaint provides only a list of communications without identifying specific misrepresentations contained therein, “the complaint has not alleged a right to relief that is ‘plausible on its face.’” *Am. Dental Ass’n v. Cigna Corp.*, 605 F.3d 1283, 1292 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570).

Here, Plaintiffs have failed to meet any of the requirements of Rule 9(b). Plaintiffs do not cite to or attach any records that contain false statements, nor do Plaintiffs identify the specific

misrepresentations contained in each of the documents. (*See generally* ECF No. 14).[6] Plaintiffs merely allege "Defendants conducted the affairs of this enterprise through a pattern of racketeering activity, utilizing interstate wires and mail to commit fraud, convert business assets, and submit fraudulent Medicaid billings totaling $4M–$6M annually, directly injuring Plaintiffs' business and property." (ECF No. 14, p. 5 ¶ 26). Nowhere in their general, conclusory allegations of fraud do Plaintiffs specify which statements are allegedly false or contain misrepresentations and what facts justify the allegation that the statements are false. *See id.* Nowhere do Plaintiffs specify how they were misled, by which of the Defendants they were misled, or what specific facts they believed were true based upon Defendants' alleged representations relating to the APA and Settlement Agreement. *See id.*[7] Plaintiffs have therefore failed to meet the requirements of Rule 9(b).

**ii. *Plaintiffs' RICO Claim Fails Under the Intracorporate Conspiracy Doctrine***

Plaintiffs' RICO claim, (and underlying civil conspiracy claim, (Count V)), also fails because it violates the intracorporate conspiracy doctrine. To state a claim under 18 U.S.C. § 1962(c), a plaintiff must allege that (1) a person conducted (2) an enterprise through (3) a pattern of (4) racketeering activity. *See* 18 U.S.C. § 1962(c); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). The statutory language of § 1962(c) requires that a RICO defendant or person be separate and distinct from the alleged enterprise. *See Coleman v. Commonwealth Land Title Ins. Co.*, 684 F.Supp.2d 595, 610 (E.D. Pa. 2010).

---

[6] Plaintiffs attach alleged text messages and emails with Defendant Kripa from 2021 and Defendant Chibras from 2021 and 2024 to the Amended Complaint. In addition to these correspondences having no bearing on the allegations in the Amended Complaint, even if they were somehow related to the facts at-issue, pre-agreement statements would be barred by the integration clause in the 2024 Settlement Agreement. (ECF No. 26, Ex. A, Section 18).

[7] According to Plaintiffs' explanations, the communications with Defendant Kripa and Defendant Chibras merely relate to the alleged financial health of Defendant AWC pre-Settlement Agreement. (ECF No. 14, p. 3 ¶¶ 34, 37).

As a general rule, agents of an entity cannot conspire with that entity. *See Parker v. Learn the Skills Corp.*, 219 Fed.Appx. 187, 189-90 (3d Cir. 2007). *See also Levine v. First Am. Title Ins. Co.*, 682 F. Supp. 2d 442, 458 n.7 (E.D. Pa. 2010) ("If Plaintiff's claim was that the enterprise consisted of a defendant corporation in association with its own employees or representatives, Defendant would be correct that the RICO count would fail for lack of distinctiveness.") (citation omitted); *Weir v. Cenlar FSB*, No. 16-cv-8650, 2018 WL 3443173, at *7 (S.D.N.Y. July 17, 2018) ("'[A] corporation acting in concert and in the ordinary course of business with its agents and employees is not a RICO enterprise, whether or not the agents are external or internal to the corporation,' even where that business is alleged to be fraudulent.") (internal citation omitted); *Friedland v. Unum Group*, 50 F. Supp. 3d 598, 604 (D. Del. 2014) ("For purposes of § 1962(c), a corporation is not distinct from its subsidiaries, relatives, agents, or affiliates.") (citation omitted).

Plaintiffs have expressly alleged that the individual Defendants conspired with AWC, of which they were agents. (ECF No. 14, p. 5 ¶ 35) ("The individual Defendants (Chibras, Desrochers, Kripa) and corporate entities combined and conspired with a common unlawful purpose."). Such a conspiracy is impossible under the intracorporate conspiracy doctrine. *See Parker*, 219 Fed.Appx. at 189-90. Thus, Defendants request that the Court enter an order dismissing Plaintiffs' RICO claim and decline supplementary jurisdiction over Plaintiffs' remaining state law claims.[8]

## V. CONCLUSION

For the foregoing reasons, the Defendants respectfully request that the Court grant their Motion and enter judgment in the Defendants' favor on all counts alleged in Plaintiffs' Amended

---

[8] Diversity jurisdiction is not available here, where Plaintiff Top Choice and Defendant AWC are both Pennsylvania companies. (ECF No. 14, ¶¶ 2-3).

Complaint, or, in the alternative, dismiss Plaintiffs' RICO claim and decline jurisdiction over Plaintiffs' state law claims.

Respectfully submitted,

**FOX ROTHSCHILD LLP**

Dated: August 17, 2026

By: _/s/ Ely Goldin_

Ely Goldin, Esquire (ID No. 91494)
980 Jolly Rd., Suite 110
Blue Bell, PA 19422
Phone: (610) 397-6500
egoldin@foxrothschild.com

*Attorneys for Defendants Aging with Comfort, Petra Capital Partners, Silverpalm Capital, Christian Chibras, Jean Paul Desrochers, and Beshmir Kripa*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SAMERA BUTLER, Indiv. and o/b/o<br>TOP CHOICE HOME CARE,<br><br>*Plaintiffs,*<br><br>v.<br><br>AGING WITH COMFORT,<br>PETRA CAPITAL PARTNERS,<br>SILVERPALM CAPITAL,<br>CHRISTIAN CHIBRAS,<br>JEAN PAUL DESROCHERS, and<br>BESHMIR KRIPA,<br><br>*Defendants.* | CIVIL ACTION NO. 2:26-CV-04855- JS |

**CERTIFICATE OF SERVICE**

I, Ely Goldin, hereby certify that on August 17, 2026, the foregoing document was filed electronically via the Court's CM/ECF system, which will send notification of such filing to all registered participants. Because Plaintiff Samera Butler is proceeding *pro se* and may not be a registered CM/ECF participant, a true and correct copy of this filing was also served upon Plaintiff via first-class U.S. Mail at the following address:

Samera Butler
216 N. 5th Ave, Unit 3
Long Branch, NJ 07740
Topchoicehomecare@gmail.com

*/s/ Ely Goldin*
Ely Goldin, Esq.